R. H. BARBOUR AND BLANCHE P. BARBOUR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55888.    Filed February 28, 1958.

*Sidney B. Gambill, Esq.,* for the petitioners.
*Hubert E. Kelly, Esq.,* for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in the income tax of petitioners and additions thereto as follows:

| Year | Income tax deficiency | Additions to tax | | |
|------|------|------|------|------|
| | | Sec. 293 (a) | Sec. 294 (d) (1) (A) | Sec. 294 (d) (2) |
| 1948 | $806.22 | $40.31 | | $43.62 |
| 1949 | 16,615.98 | 830.80 | | 964.05 |
| 1950 | 20,732.28 | 1,017.30 | | 1,146.26 |
| 1951 | 50,380.88 | 2,519.04 | | 2,895.83 |
| 1952 | 22,316.78 | 1,115.84 | $2,018.28 | 1,210.97 |

As the result of stipulations between the parties, the sole remaining issue is whether respondent erred in disallowing a certain bad debt deduction claimed by petitioners for the taxable year 1951, or in the alternative, whether such deduction should have been allowed for the taxable year 1952.

### FINDINGS OF FACT.

The stipulated facts are so found.

R. H. Barbour and Blanche P. Barbour have at all times material been husband and wife residing in Fayetteville, North Carolina. They filed their joint Federal income tax return for 1951 with the then collector of internal revenue for the district of North Carolina, and their joint Federal income tax return for 1952 with the director for the district of North Carolina. Both of the foregoing returns were in respect of calendar years and were filed on the cash basis. R. H. Barbour will hereinafter be referred to as the petitioner.

During all times material, petitioner owned and operated several substantial farms in Cumberland and Hartnett Counties, in the State of North Carolina. In 1951 about 140 acres of tobacco, 585 acres of

cotton, and 95 acres of wheat were planted on these farms. In addition to the foregoing, petitioner owned 45 per cent of the stock of Proctor-Barbour Company, a corporation engaged in the business of selling farm equipment and related items. He was also a partner in various farming and tobacco warehouse operations.

In 1950, petitioner employed one William Edward Davis (hereinafter referred to as Davis) to oversee and manage his farm operations. It was orally agreed that petitioner would furnish the lands and fertilizer, and Davis would furnish everything else. Crops produced were to be shared on a 50–50 basis, and petitioner agreed to advance working capital to Davis to the extent required by Davis.

Davis commenced work under the foregoing arrangement in the fall of 1950. On October 10, 1950, petitioner purchased equipment from Proctor-Barbour Company at a cost of $14,524.22, and resold it to Davis at the same price. Petitioner also sold to Davis at his depreciated cost various items of equipment standing on his farms, and made substantial advances to Davis or his estate in 1950 and 1951. The advances were charged to Davis's account on petitioner's personal books. No credits appear on this account for 1950.

Because of the large sums which Davis owed to petitioner, Davis insured his own life for $25,000, naming as beneficiaries the personal representatives of his estate. Petitioner was also persuaded to apply for a policy on Davis's life in the same amount, with himself as beneficiary. Applications for both policies were duly made, and the policies were issued on April 18, 1951. Davis and petitioner each paid a quarterly premium in the amount of $109.50 at the time of the applications. Petitioner subsequently charged the premium paid by him to Davis's account.

Davis was shot and killed by a tenant farmer on August 7, 1951, and petitioner was named administrator of his estate. Thereafter, upon proper proof of claim, the insurer paid to the estate and to petitioner in respect of the aforementioned policies the amount of $24,963 each. This amount in each case consisted of $25,000, the face amount of the policy, less $37 premium due from the expiration of the quarter for which premiums had been paid to the date of death. Petitioner received one check in the amount of $24,963 as administrator of the estate in respect of the policy payable to Davis's personal representatives, and the other check in the same amount as named beneficiary of the other policy.

Soon after Davis's death petitioner undertook to harvest the crops growing on the farm. He found that some of Davis's tenants had left, making it necessary to hire other workers. The tenants had also neglected the crops after Davis died, and insects had damaged the tobacco. The tobacco crop that year brought a price of $292 per acre, compared with a normal selling price per acre of $700 to $1,000.

Petitioner personally advanced sums to Davis's estate for the purpose of carrying out necessary farming operations under the agreement. These were in addition to prior cash advances and sales on credit to Davis during the latter's lifetime. Neither the total amount of all such advances and charges nor the total of such advances and charges to Davis during his lifetime can be accurately determined from the record.

Petitioner did not make formal claim against the estate for any indebtedness due him; he did, however, take for himself the proceeds of the policy payable to Davis's representatives and credited this amount in computing the indebtedness allegedly due him. No part of the proceeds received on the other policy, in which petitioner was the named beneficiary, was so credited or otherwise applied to or used for the benefit of the estate.

On his return for 1951, petitioner claimed a bad debt deduction in the amount of $28,668.10 for unpaid advances to Davis and his estate. At the time this proceeding was heard, he claimed as such deduction the amount of $22,204.16, computed as follows:

Charges:

| | |
|---|---|
| Basis of equipment sold to Davis, 10–10–50 | $17,859.16 |
| Cash advances to Davis during 1950 | 7,633.54 |
| Cash advances to Davis during 1951 | 65,501.55 |
| Additional charges to Davis during 1951 | 665.95 |
| Supplies advanced to Davis through Proctor-Barbour Co., Inc. | 7,506.36 |
| Total charges | 99,166.56 |

Credits:

Cash received by administrator:

| | | |
|---|---|---|
| Cash received from Davis | $850.00 | |
| Sale of tobacco | 19,708.79 | |
| Sale of cotton and cotton seed | 6,324.09 | |
| Proceeds of insurance policy payable to Davis's representatives | 24,963.00 | |
| Freight and hauling income | 569.75 | |
| Sale of wheat | 1,137.07 | |
| Sale of potato plants | 82.15 | |
| Sale of beans | 229.90 | |
| Interest refund | 57.11 | |
| Sale of watermelons | 52.60 | |
| Miscellaneous cash receipts | 455.98 | |
| Total | 54,430.44 | |
| Value of machinery and equipment received by R. H. Barbour and either sold or transferred in payment of obligations against the Estate of W. Ed Davis— Value as stipulated in referee hearing on 2/24/55 | 22,531.96 | |
| Total credits | | 76,962.40 |
| Balance of account | | 22,204.16 |

In or about March of 1954, the widow and children of Davis commenced proceedings against petitioner, individually and as administrator, in the Superior Court of Cumberland County, State of North Carolina. The complaint therein reads in part as follows:

4. That Christine D. McLeod, as the widow of William Edward Davis, was, at the time of his death, entitled to administer the estate of her deceased husband.

5. That the defendant, Robert H. Barbour, himself and through his agents, did influence, persuade and induce the said Christine D. McLeod, to renounce her legal right to administer the estate of her deceased husband in favor of the defendant Robert H. Barbour.

6. That the defendant Robert H. Barbour then made application to the Clerk of the Court of Cumberland County and was appointed administrator of the said estate on the 14th day of August 1951 and qualified as such on said date and gave a justified bond in the sum of FIFTY THOUSAND DOLLARS ($50,000.00) with the defendants B. R. Buhmann and James C. Davis as sureties thereon, which bond is recorded in the office of the Clerk of the Superior Court of Cumberland County, said bond being conditional upon the lawful performance, as administrator, of the said Robert H. Barbour.

7. That the defendant, Robert H. Barbour, after his appointment as administrator failed and refused to administer the said estate in compliance with the laws of North Carolina in the following particulars:

(a) He did fail and refuse to file an inventory of the assets and liabilities of the said estate within three months of his appointment as is required by law;

(b) He did fail and refuse to publish a notice to creditors of the estate to file their claims against the said estate, as is required by law.

(c) He did fail and refuse to file any inheritance and estate tax returns, and any income tax returns, for the said estate, as is required by law.

(d) He did fail and refuse to file an annual account within 12 months of his appointment, showing the amount of property received by him and the disposition made thereof, as is required by law.

(e) He did wilfully sell and dispose of personal property belonging to the estate, at private sale, and without first obtaining the permission of the Court, as is required by law.

(f) He did wilfully, wrongfully and unlawfully fail and refuse to assign from the said estate a years allowance for the support of each of the two minor children of the decedent, William Edward Davis, as is required by law, both children being under the age of fifteen years.

(g) He did pay alleged claims against the said estate which were held by himself, and others, and disposed of the assets of the estate, without requiring the presentation of affidavits or other satisfactory evidence of the said claims, and has filed no records of his distribution of the proceeds of the estate in satisfaction of the alleged claims of himself and others, all of which actions are contrary to law.

(h) He did wilfully fail and refuse to establish a separate bank account for the monies belonging to the said estate but instead did wrongfully place the monies collected for the estate in his own personal bank account, and did commingle the monies belonging to the estate with his own, and did deposit said money as his own, contrary to the laws of North Carolina.

(i) He has failed and refused to file any final account for the said estate, although more than two years have elapsed since his qualification as administrator, and during this time he has failed and refused to file with the Court any records of transactions pertaining to the assets of the said estate, all of which actions are contrary to the law of North Carolina.

8. That due to the action of the defendant Robert H. Barbour in prevailing upon Christine D. McLeod the mother of the plaintiffs to renounce, in his favor, her right to administer the estate of her deceased husband, and due to his wilful failure and refusal to administer the said estate in compliance with the laws of North Carolina made and provided, the infant plaintiffs have been denied their rightful share in the proceeds of the said estate, to which proceeds they are entitled as the sold [sic] issue of the decedent, William Edward Davis.

9. That by reason of the acts and omissions set out above the defendant Robert H. Barbour has failed and refused to discharge the trust reposed in him as administrator, but on the contrary, after having received monies and properties of the said estate amounting in value to the sum of at least $83,976.44, he has appropriated such monies to his own use, has failed to account with the plaintiffs or the Court for the said monies and has thereby deprived the plaintiffs of their rightful share therein.

10. That the plaintiffs through their next friend have made demand upon the defendant Robert H. Barbour for their rightful distribution of said estate and have made numerous demands upon defendant Robert H. Barbour for an accounting and settlement and that defendant, Robert H. Barbour[,] refused and still refuses to account for or to pay the same or any part thereof.

WHEREFORE, the Plaintiffs pray a judgment as follows:

1. That as distributees of the deceased, William Edward Davis, they have and recover of defendant Robert H. Barbour as principal, and each and all of the other defendants sureties, either individually or in their representative capacities as hereinbefore stated, two-thirds of the sum of $83,976.44, said amount being the sum of FIFTY FIVE THOUSAND NINE HUNDRED EIGHTY FOUR AND 29/100 DOLLARS ($55,984.29).

2. That they each recover the sum of TWO HUNDRED FIFTY DOLLARS ($250.00) for their support for the year following the death of their father, William Edward Davis.

3. That the said defendant Robert H. Barbour be required to disclose to the Court the exact amounts of money collected by him from the sale of—

(a) every item of farm equipment and machinery,

(b) every car and truck,

(c) every crop,

(d) every other asset of the estate disposed of, which the deceased William Edward Davis, owned or in which the deceased, William Edward Davis, had an interest at the time of his death.

4. That the defendant Robert H. Barbour be removed as administrator of said estate; that his letters be revoked and that the Court appoint some other person to succeed in the administration of said estate.

5. That the Court grant any further relief that it believe just and proper.

Petitioner has never filed an annual or final accounting as administrator. At the time the instant proceeding was heard, the foregoing suit against petitioner was still pending, and final decision therein had not been reached.

Petitioner's books and records were maintained in a haphazard manner, and contained many errors. No detailed audit has ever been made of those books and records. An accountant was engaged by petitioner to make a limited audit after receipt of the deficiency notice herein, but the accountant did not attempt to verify statements of purported transactions by contacting other alleged participants, and could not vouch for the accuracy of the figures above set forth.

OPINION.

Petitioner claims a business bad debt deduction in the amount of $22,204.16 in respect of his alleged dealings with Davis and the estate. We cannot find from the record before us that respondent's disallowance thereof was erroneous.

The parties agree that if deductible at all, the item in question is a business bad debt. It is still incumbent upon petitioner, however, to prove (1) that a net indebtedness in his favor existed and its amount, and (2) that such indebtedness became worthless during the period in question here, either in 1951 or 1952. We do not think that petitioner has satisfied his burden with respect to either matter.

The accountant who prepared the schedule upon which petitioner bases his present contentions testified at length, and we are convinced of his sincerity and honesty. It is apparent, however, that he was not personally familiar with petitioner's financial history or his transactions with the estate, and could testify only to the contents, but not to the accuracy, of petitioner's books and records. He had not made the entries upon which he based his computations, and could not vouch for their accuracy. He admitted that petitioner's books and records were poorly kept and replete with errors, and could not explain a number of entries which could detract from the accuracy of his computation. He was unable, in short, to validate the very entries upon which, ultimately, his own testimony was based.[1]

---

[1] The following appears from his testimony on cross-examination:

Q. I believe you testified on direct examination that you made an audit of these books and records. Did you make a detailed audit?

A. What do you mean by detailed audit?

Q. What kind of audit did you mean when you testified. You sort of general [sic] said, "I made an audit". Did you make a detailed audit under the accounting principles set down by the Certified Public Accountant's Association?

A. Audits are of different scope. It depends on the records and the purpose of the audit. My audit, of course, primarily was based on your statutory notice. I worked toward that figure. I took off trial balances. I tried to vouch, so far as the records would permit, I tried to vouch all expenditures, expenses and so forth.

Q. Well, did you send out, say, letters to creditors to find our whether or not the account was correct and things of that nature?

A. No, I didn't because of the fact this audit was made several years after the year in which we were working.

Q. Didn't you find from your examination that the books were haphazardly kept and kept in a very poor manner?

A. There were quite a few errors in the books.

Q. I want to ask you again, didn't you find that they were kept very poorly, not just a few errors; anybody can make a few errors, but weren't these books and records of the petitioner and his various companies kept in a haphazard manner, didn't your examination reveal that?

A. Yes.

Q. All right, then, I want to ask you; as a certified public accountant, can you give this Court an unqualified certification that the $22,288.60 figure, to which you have testified or your papers reflect, as being owed to the petitioner here by W. E. Davis or his estate as of December 31st, 1951, is correct?

A. On the basis of the information in the records—

Q. Now, I want to ask you, can you give an unqualified certification to that as a C. P. A.?

A. No, I can't.

Petitioner undoubtedly made substantial advances to Davis and the estate. But his books and records, concededly haphazard, cannot be accepted as accurately establishing either their amount, or the amount properly to be credited to the estate, and this uncertainty is fatal to petitioner's case. This is more than merely not knowing the precise amount of a clearly existing indebtedness in petitioner's favor; we do not even know if any such debt exists. Petitioner concededly received substantial sums which should properly be credited to the estate, but we cannot accept his books and records as accurately establishing the amount of such credits. Thus we cannot say, on the basis of the unsatisfactory record before us, that all proper debits and credits in fact balance out in petitioner's favor. We have no choice but to hold that petitioner has failed to prove the existence of any net indebtedness in his favor.

Furthermore, the widow and children of Davis have commenced a proceeding in a State court against petitioner, which action was still pending at the time of the hearing herein. The basic allegations by plaintiffs therein are to the effect that this petitioner misappropriated, wasted, and/or failed to account for assets of the estate, in an amount substantially exceeding the sum he here seeks to deduct as a bad debt.

We do not know the facts with respect to the merits of that proceeding, and express no opinion thereon. Nor will we hazard a guess as to its eventual outcome.

It appears, however, to be a distinct possibility that a substantial recovery may be had against petitioner by the heirs of Davis. Presumably, any such recovery would be offset by any amounts which petitioner can prove owing to him from the estate or would be subject in some manner to such claim. This uncertainty due to the State court proceeding is fatal to petitioner's contentions to perhaps a greater degree than the inadequacy of his books and records.

First, such uncertainty makes it impossible for us to say that petitioner has demonstrated the worthlessness of any indebtedness due him. The State court may well hold that the estate had ample assets to satisfy all liabilities, including any owed to petitioner, but that petitioner misappropriated, wasted, and/or failed to account for such assets. Petitioner's liability for any such activity on his part, together with his apparent solvency, would make valuable a claim against him by the estate, and it could not be said that such estate was insolvent.

Secondly, and even more fundamentally, the uncertainty with respect to the eventual outcome of that proceeding prevents any finding that a debt existed in petitioner's favor, even ignoring the inadequacy of his books and records. The indebtedness which petitioner seeks here to treat as a bad debt is one resulting from a balancing out of

debits and credits, yet the plaintiffs in the State court proceeding claim that petitioner in fact was indebted to the estate, i. e., that a proper balancing of debits and credits would show a substantial balance in the estate's favor. It is far from clear that that proceeding is frivolous.

The foregoing makes moot respondent's argument that, as a matter of law, the amount received by petitioner in respect of the policy naming him individually as beneficiary must be credited against any indebtedness to him from the estate. Cf. secs. 22 (b) (1) and 23 (k) (1), I. R. C. 1939. Accordingly, we express no opinion on that question.

In view of the foregoing, respondent's determination must be sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*