ROBERT N. MULLINS AND RITA A. MULLINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mullins v. Commissioner
Docket No. 1109-73.
United States Tax Court
T.C. Memo 1974-204; 1974 Tax Ct. Memo LEXIS 115; 33 T.C.M. (CCH) 912; T.C.M. (RIA) 74204; August 5, 1974, Filed. Robert N. Mullins and Rita A. Mullins, pro se. Robert B. Nadler, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Amount 1969
$ 991.34
1970
1,358.01
The issues for our decision are: 1. Whether petitioners are entitled to a travel expense deduction in 1969 for any amounts in excess of $4,328.99; 2. Whether petitioners are entitled to a travel expense deduction in 1970 for expenditures incurred by petitioner Robert N. Mullins in traveling between petitioners' residence and his place of employment; 3. Whether petitioners are entitled to a casualty, bad debt or theft deduction in 1970 for losses resulting from the sale of their household goods by a storage company. FINDINGS OF FACT Some of the facts have been stipulated and are so found. *117 Petitioners Robert N. Mullins (hereinafter referred to as petitioner), and Rita A. Mullins are husband and wife who, at the time of the filing of the petition herein, resided in Clarksville, Tennessee. They filed their Federal joint income tax returns for the taxable years 1969 and 1970 with the Southeast Service Center, Chamblee, Georgia. Issues 1-2. Business Travel Expenses During the taxable year 1969 petitioner was employed as a salesman and a construction worker by several different employers. Petitioners maintained a residence in Hermitage, Tennessee, throughout 1969. From January 3, 1969, to May 2, 1969, petitioner was employed as a salesman by Traid Corporation, Glendale, California. He worked out of a zone office of Traid located in Houston, Texas, and traveled throughout several southern states selling electronic cameras for that corporation. Petitioner had to pay all his own travel expenses while employed by Traid. From May 3, 1969, to May 15, 1969, petitioner was employed as a real estate salesman by Diversified Land Developers, Inc., Nashville, Tennessee. During this period he resided at petitioners' residence in Hermitage, Tennessee. Petitioner was *118 required to use his automobile in connection with his employment with Diversified. From June 1, 1969, to July 31, 1969, petitioner was employed as a real estate salesman by Aquia Corporation (Aquia), Stafford, Virginia. Petitioner was required to use his car in connection with his employment with Aquia and had to pay all of his expenses. From August 15, 1969, to September 15, 1969, petitioner was employed as a field superintendent and safety director by Verne Woodrow Company (Verne), a construction company located in Nashville, Tennessee. He traveled to various construction sites located in several southern states while employed by Verne. Petitioner was furnished a credit card by Verne to use for the expenses he incurred while working for that company. From September 19, 1969, to October 15, 1969, petitioner was employed as an ironworker by Custodis Construction Company, Inc. (Custodis), Cumberland City, Tennessee. While employed by Custodis he sometimes commuted to Cumberland City from his residence in Hermitage, Tennessee, which was located approximately 80 miles from his place of employment, and at other times obtained room and board in Cumberland City. From October 16, 1969, until *119 the end of the taxable year 1969, petitioner was employed as an ironworker by the Tennessee Valley Authority (TVA), at a facility which was also located in Cumberland City, Tennessee. During this period petitioner would either commute from his residence in Hermitage or obtain room and board in Cumberland City at a weekly cost of $26. Though petitioner was a member of the ironworker's union, he was not a member of the local of said union with territorial jurisdiction over the TVA work area in Cumberland City. Accordingly, under the conditions of petitioner's employment agreement with TVA, his employment would be terminated if a union ironworker with a membership in the Cumberland City local applied for his position. Petitioner was required to furnish his own tools by TVA. His tools consisted of ironworking tools, reinforcing steel tools, safety glasses, raincoat, hardhats and overshoes. These tools had a combined weight of approximately 75 pounds, and a total value of between $350 and $400. Petitioner transported the tools to work in his car because he was not assigned a personal locker to keep them in by TVA. On their 1969 joint Federal income tax returns, petitioners *120 claimed a travel expense deduction in the amount of $9,500. In his statutory notice of deficiency, respondent allowed $4,328.99 of such claimed deduction. In January 1970, petitioner moved his family residence from Hermitage to Clarksville, Tennessee, to be closer to his job with TVA. He continued his employment with TVA until sometime in 1972, and commuted every day from Clarksville to Cumberland City, a round trip of approximately 70 miles. There was no public transportation available to petitioner from Clarksville to Cumberland City. On their 1970 joint Federal income tax return petitioners claimed a travel expense deduction in the amount of $2,333. Such deduction was disallowed in full by respondent in his statutory notice of deficiency. Issue 3. Casualty Loss Deduction In February 1968, petitioners moved from Houston, Texas, to Nashville, Tennessee. At that time they stored certain household goods and personal property with Capitol Moving and Storage Co., Inc. (Capitol), in Nashville, at a storage charge of $6 per month. Petitioners failed to make any payments for the storage charges, and after a period of six months, Capitol began sending them notices of storage *121 balances due. On November 15, 1968, petitioners paid Capitol $18 on their account. Such payment was the only amount petitioners paid to Capitol from February 1968 to March 1969. In March 1969, Robert L. Hangel, president of Capitol, reviewed delinquent accounts to determine whether any stored goods should be sold at a public sale. He reviewed petitioners' account and sent them a letter on April 1, 1969, in which he stated that a balance of $72 was due on their account and warned that their storage lot would be sold at a public sale if they did not make payment on contact Capitol by April 10, 1969. Notice of the letter sent by certified mail was left at petitioners' residence on April 3, 1969, and April 12, 1969. The letter was not claimed by petitioners and was returned to Capitol on April 15, 1969. Petitioners' property was advertised for sale in the Nashville Record on April 15, 1969, and April 22, 1969, and was sold at a public sale on April 23, 1969, for an undisclosed amount. Capitol filed a petition in bankruptcy on May 20, 1969. Petitioners did not learn that their property had been sold by Capitol until June or July of 1969. On July 9, 1969, petitioners filed *122 a $5,000 claim in the Capitol bankruptcy proceeding. A trustee's report in the matter of Capitol's bankrupt estate was filed in the United States District Court in Nashville, Tennessee, on May 30, 1971. Such report indicated that the assets of the bankrupt estate were not sufficient to satisfy the claims of any of Capitol's creditors. The Capitol bankruptcy proceedings were closed on June 2, 1972. On their 1970 Federal joint income tax return, petitioners claimed a casualty loss of $5,000 resulting from the sale of their property by Capitol. Such claimed loss was disallowed in full by respondent. OPINION Issues 1-2. Employment Related Expenses The first issue for our decision is whether petitioners are entitled to a business travel expense deduction for 1969 in excess of the amount allowed by respondent. On their 1969 return, they claimed a deduction in the amount of $9,500 for travel expenses incurred while petitioner was employed as a salesman and a construction worker. Respondent allowed $4,328.99 of such claimed deduction in his statutory notice of deficiency. Before *123 petitioners may deduct business travel expenses, section 274(d)[1][2] requires that they substantiate with adequate records or evidence sufficient to corroborate their own statements (1) the amount of the expense, and (2) the time and place it occurred. At trial, petitioners introduced receipts of 1969 expenditures for gas and oil, automotive repairs, meals and lodging totaling approximately $4,500. Their claimed travel expenses for 1969 are more than $5,000 greater than the total amount of such receipts. Petitioners failed to produce any evidence *124 other than their own testimony in support of a deduction in excess of the total amount of their receipts. It is clear that such evidence does not meet the substantiation requirements of section 274(d) and that petitioners are not entitled to any deduction in excess of their receipts. Cf. William F. Sanford, 50 T.C. 823 (1968), affd. 412 F.2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969); Arthur C. Puckett, Jr., 56 T.C. 1092, 1096 (1971). The amount of travel expenses respondent allowed petitioners is approximately $125 less than the total amount of the receipts they submitted. It is respondent's position that of the receipts submitted, only $3,851.18 constituted allowable travel expenses. He therefore argues that the travel expenses petitioners were allowed in the statutory notice of deficiency are generous because they exceed the amount of allowable travel expenses they substantiated by nearly $500. Among the receipts respondent disallowed were those for expenditures petitioner incurred while working for TVA in Cumberland City, Tennessee. During the period petitioner worked for TVA in 1969, he maintained *125 his residence in Hermitage, Tennessee, and would either commute from Hermitage or obtain room and board in Cumberland City. Petitioner argues that the travel expenses he incurred during this period are deductible as "away from home" expenses under section 162(a) (2) because his employment with TVA was temporary. While it is true that business travel expenses incurred in the course of temporary employment are generally deductible, E. G. Leach, 12 T.C. 20 (1949); Harry F. Schurer, 3 T.C. 544 (1944); Emil J. Michaels, 53 T.C. 269, 273 (1969), the burden of proof rests with petitioners to prove that such employment was in fact temporary. For purposes of section 162(a) (2), employment is temporary if its termination may reasonably be expected to occur within a fixed or reasonably short period of time. Beatrice H. Albert, 13 T.C. 129, 131 (1949); Ronald D. Kroll, 49 T.C. 557 (1968); Leo M. Verner, 39 T.C. 749 (1963). Employment of indefinite duration is not considered temporary. Michael J. Carroll, 20 T.C. 382 (1953); *126 Josette J. F. Verrier Friedman, 37 T.C. 539 (1961). On the basis of the evidence presented it is our conclusion that petitioner's employment with TVA was not temporary. Petitioner remained in the employment of TVA until 1972, a period of about three years. Employment of such length weighs heavily against petitioner's claim that his employment was temporary. Cf. Floyd Garlock, 34 T.C. 611 (1960). We also note that petitioner moved his family from Hermitage to Clarksville in January 1970, in order to be closer to his work at TVA, thereby demonstrating his belief that his employment would be of substantial duration. Finally, at trial petitioner admitted that he expected his employment with TVA to be of substantial duration when he testified that "I went to work for TVA, and it looked like a more permanent situation." In support of his position, petitioner relies on his contract with TVA which classified his employment as "temporary." Petitioner received such a classification because though he was a member of the ironworker's union, he was not a member of the local of that union which encompassed the TVA work area. Accordingly, his employment with TVA *127 would be terminated if a worker with membership in such local applied for his position. Petitioner's situation is similar to the taxpayer in Floyd Garlock, 34 T.C. 611 (1960). In that case the taxpayer also was not a member of the union local and was subject to dismissal if a local member applied for his position. The taxpayer's position was described by the union as "temporary." Despite such limitation on his employment, this Court held that the taxpayer's employment was not temporary noting that the taxpayer held such employment for approximately four years. The Court stated at page 616 that "the mere labeling or designation of a job or job permit as "temporary" by either union or employer is not determinative of the issue." Though petitioner's employment with TVA would have been terminated had a member of the local applied for his position, the evidence does not indicate that the likelihood of such termination was substantial enough to expect that his employment would terminate within a short period of time. Cf. Beatrice H. Albert, 13 T.C. 129, 131 (1949). In fact the actual length of petitioner's employment and his actions indicate otherwise. *128 We conclude that petitioner's employment with TVA was not temporary and deny the claimed deductions for travel expenses incurred during such employment. With the disallowance of these expenses, the total amount of petitioner's receipts is less than the amount of travel expenses they were allowed by respondent. We therefore must hold for respondent on this issue. The second issue for our decision is whether petitioner may deduct the automobile expenses he incurred in driving to and from his home in Clarksville, Tennessee, to the TVA work site in Cumberland, Tennessee, for the taxable year 1970. Petitioner sets forth two theories in support of his claimed deduction. By his first theory, petitioner asserts that his employment with TVA was temporary and that his expenses were therefore deductible as "away from home" expenses under section 162(a) (2). We have held that such employment was not temporary and accordingly 1970 commuting expenses may not be deducted as "away from home" expenses. Petitioner's second theory is that, because he transported his ironworking tools in the trunk of his car, his travel expenses are deductible as expenses incurred in transporting business *129 equipment. In Fausner v. Commissioner, 413 U.S. 838 (1973), the Supreme Court held that a taxpayer may deduct only "Additional expenses * * * incurred for transporting job-required tools and material to and from work." (413 U.S. at 839.) In the instant case, petitioner presented no evidence that he incurred any additional expenses in transporting his tools in his car. Petitioner testified that he would have commuted to work by car whether or not he had to transport his equipment because no other transportation was available. We hold that petitioner's claimed travel expenses for 1970 are non-deductible. Issue 3. Casualty Loss Deduction The third issue for our decision is whether petitioners are entitled to a casualty, bad debt or theft deduction in 1970 for losses resulting from the sale of their household goods by Capitol. In 1968 petitioners stored household goods with Capitol. Capitol sold such property on April 23, 1969, at a public sale after petitioners became delinquent in paying their storage fees. Capitol filed a petition in bankruptcy on May 20, 1969. On July 9, 1969, petitioners filed a $5,000 claim in the Capitol bankruptcy proceeding *130 based on the sale of their property by Capitol. Nothing has been paid on such claim and the bankrupt estate has now been closed with nothing paid to any creditors. Petitioners claimed a casualty loss of $5,000 on their 1970 return based on these events which respondent has disallowed in full. Section 165(c) (3) allows taxpayers a deduction for "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." We are unable to find on the basis of the facts in the instant case that petitioners are entitled to any loss under this section. Casualty loss deductions are limited to those losses arising from sudden, unexpected occurrences. Clinton H. Mitchell, 42 T.C. 953, 972 (1964); Appleman v. United States, 338 F.2d 729 (C.A. 7, 1964), certiorari denied 380 U.S. 956 (1965). Clearly, the sale of petitioner's property by Capitol was not an occurrence of this nature and we must deny *131 petitioners their claimed deduction as a casualty loss. Cf. Aaron F. Vance, 36 T.C. 547, 551 (1961). Petitioners argue in the alternative that their claimed loss is deductible as a theft loss, claiming that Capitol failed to comply with Tennessee state law in the sale of their property. Under Tennessee state law, a storage company can enforce a lien against stored goods by sale of such goods, provided it follows certain procedures. Tenn. Code Ann. sec. 47-7-210 (1963). Petitioners argue that Capitol failed to follow these procedures because it sold their goods only eight days after it first advertised the sale of such goods in the Nashville Record. Tennessee law requires that the sale be held at least 15 days after the first advertisement. While it is true that Capitol failed to fully comply with the state statute in the sale of petitioners' goods, we are unable to characterize Capitol's conduct as "theft." For a theft loss deduction section 165 requires that the loss arise from the criminal appropriation of the taxpayer's property. Edwards v. Bromberg, 232 F.2d 107, 110 *132 (C.A. 5, 1956); Perry A. Nichols, 43 T.C. 842, 884 (1965). Under Tennessee law, the remedy for noncompliance in the enforcement of a warehouseman's lien is as follows: The warehouseman is liable for damages caused by failure to comply with the requirements for sale under this section and in case of willful violation is liable for conversion. [Tenn. Code Ann. sec. 47-7-210(9) (1964).] Hence, Capitol's conduct was essentially noncompliance with a civil statute, which afforded petitioners a civil remedy. Petitioners have introduced no evidence into the record which could support a finding by us that Capitol's conduct constituted a criminal violation under Tennessee law. Thus, petitioners have failed to show the requisite criminal appropriation of their property, and are not entitled to any theft loss deduction. Petitioners' final argument is that under Tennessee law Capitol was required to pay them any amounts it received from the sale of their property in excess of their indebtedness to Capitol. They argue that since they received no such payment, they are entitled *133 to a bad debt loss. In order to establish such a loss petitioners need to show (1) the amount and existence of a valid debt ( R. H. Barbour, 29 T.C. 1039, 1045 (1958)), and (2) that such debt became worthless in the taxable year in which they claim the loss. Herbert W. Dustin, 53 T.C. 491, 501 (1969), affd. 467 F.2d 47, 48 (C.A. 9, 1972). In the instant case petitioners have provided no evidence to establish that the sale proceeds were in excess of their indebtedness, nor have they established that such indebtedness would have been worthless in the taxable year claimed. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified. ↩
2. SEC. 274. DISALLOWANCE OF CERTAIN * * * EXPENSES. * * * (d) Substantiation Required.--No deduction shall be allowed--
(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, * * * ↩