T.C. Memo. 1999-42

UNITED STATES TAX COURT

THOMAS A. AND MARIA M. HAGMAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2816-96.                    Filed February 8, 1999.

Thomas A. Hagman and Maria M. Hagman, pro sese.

Mark A. Weiner, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent determined deficiencies in petitioners' Federal income tax and delinquency and negligence additions and penalty as follows:

| Year | Deficiency | Additions to Tax | | Penalty |
| | | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6662 |
|---|---|---|---|---|
| 1988 | $39,560 | $9,518 | $1,978 | --- |
| 1989 | 799 | --- | --- | $160 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years under

consideration, and all Rule references are to this Court's Rules of Practice and Procedure.

Following concessions, the issues for our consideration are: (1) Whether petitioners are entitled to claim a short-term capital loss relating to a purported $65,000 loan to Grant MacCoon for 1988; (2) whether petitioners are entitled to a $76,087 long-term capital loss for purported investments in "Buck Sales" for 1988; (3) whether petitioners are entitled to $147,000[1] in bad debt losses claimed for 1989; (4) whether petitioners overstated their 1988 capital gains by $36,000; and (5) whether petitioners are liable for the delinquency and negligence additions for 1988 and an accuracy-related penalty for 1989. Separate findings of fact and opinion are hereafter set forth with respect to each of the first four issues. Those portions of the stipulation of facts that pertain to a particular issue are incorporated by this reference in the findings of fact for the issue to which they relate.

---

[1] Petitioners claimed $156,879 in deductions on their 1989 Federal income tax return, the entire amount of which was disallowed by respondent. Respondent has conceded that petitioners are entitled to deduct $6,500 of expenses. Of the $156,879 claimed, $147,000 was claimed as bad debt losses. Petitioners presented no evidence with respect to the $3,379 difference (between $150,379 and $147,000), and thus we treat this as a concession by petitioners. Theodore v. Commissioner, 38 T.C. 1011, 1041 (1962).

I.  The MacCoon Note

FINDINGS OF FACT

Petitioners Thomas A. and Maria M. Hagman, husband and wife, resided in Thousand Oaks, California, at the time their petition was filed.  Maria M. Hagman is a petitioner in this case because she joined in filing Federal income tax returns with Thomas A. Hagman (Mr. Hagman).  Subsequent references to "petitioner" refer only to Mr. Hagman.  Petitioners' 1988 and 1989 Federal income tax returns were filed on February 3, 1993, and September 30, 1993, respectively.

Mr. Hagman was employed as a bank manager for 13 years.  In 1974, he left banking to pursue a career investing in real estate.  In 1978, petitioner became aware of an opportunity to buy a 16-acre parcel of real estate within the city limits of Thousand Oaks, California.  The parcel was available for sale only if the seller could also sell the adjacent property. Petitioner lent $65,000 to Grant MacCoon (Mr. MacCoon) for the purpose of purchasing the adjacent parcel.  Petitioner and Mr. MacCoon had an agreement that petitioner would receive 25 percent of Mr. MacCoon's profits on the sale of the adjacent land.  Mr. MacCoon gave petitioner a 10-year unsecured note, bearing 7 percent interest.  The interest and principal were payable at maturity.

In 1979, Mr. MacCoon made a $5,000 principal payment on the note, reducing the amount of the note to $60,000.  The following year, Mr. MacCoon sold the property for a $400,000 profit but did

not pay 25 percent of the profit to petitioner in accord with the agreement. In 1984, petitioner sued Mr. MacCoon for the outstanding balance of the note and petitioner's 25-percent share of the profits from the sale of the adjacent land ($100,000). Petitioner and Mr. MacCoon reached a settlement in the lawsuit. Mr. MacCoon was no longer obligated to pay the note following the settlement. Petitioner provided no other information regarding the settlement. Petitioners claimed a $65,000 short-term capital loss attributable to the MacCoon note on their 1988 return. Respondent disallowed the claimed capital loss.

## OPINION

We must decide whether petitioners are entitled to a non-business bad debt deduction on their 1988 return. Generally, taxpayers may deduct the value of bona fide debts owed to them that become worthless during the year. Sec. 166(a); Millsap v. Commissioner, 46 T.C. 751, 762 (1966), affd. 387 F.2d 420 (8th Cir. 1968). Bona fide debts generally arise from valid debtor-creditor relationships reflecting enforceable and unconditional obligations to repay fixed sums of money. Sec. 1.166-1(c), Income Tax Regs. Section 166 prescribes three ways in which deductions may be taken for worthless debts: (1) As an ordinary deduction during a taxable year in which a business bad debt becomes completely worthless; (2) as an ordinary deduction when a business bad debt becomes partially worthless during the taxable year, but only to the extent worthless; and (3) as a short-term capital loss when a nonbusiness bad debt held by a taxpayer other

than a corporation becomes completely worthless during the taxable year. Sec. 166(a)(1), (2), (d).

Respondent does not dispute that the MacCoon note represented a bona fide debt owed to petitioners. Both parties also agree that the obligation is a nonbusiness debt. The parties dispute whether the note became worthless in 1988. Petitioners claim that, although Mr. MacCoon was no longer obligated to pay petitioner on the note after the 1984 settlement, the loss could not have been claimed until 1988, the maturity date of the note. Respondent contends that the note became worthless, if at all, in 1984, the year that Mr. MacCoon was no longer obligated to pay petitioner. We agree with respondent.

At trial and on brief, petitioners alleged that an Internal Revenue Service Appeals officer had informed them that they were unable to write off the bad debt until the maturity of the note, regardless of the disposition of the lawsuits. Even if such a statement had been made, respondent would not be estopped from asserting that the debt became worthless in 1984. Such a statement would constitute a statement of law, and therefore one of the necessary elements for estoppel would not be present. Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977).

The fact that an obligation is not mature at the time a bad debt deduction is claimed does not automatically prevent allowance of a bad debt deduction under section 166. Sec. 1.166-1(c), Income Tax Regs. Petitioners have failed to establish that

the MacCoon note became worthless in 1988.  Accordingly, petitioners are not entitled to a section 166(a) loss for 1988.

II.  Buck Sales

FINDINGS OF FACT

In 1986 and early 1987, petitioner spent approximately $76,000 as a result of his involvement with an entity known as Buck Sales.  Petitioner spent approximately $20,000 on travel, lodging, and food expenses for himself and six other individuals.  In addition, petitioner spent $18,700 on consulting fees and approximately $38,000 on legal fees.  Petitioners claimed these amounts on their 1987 return as a long-term capital loss.  Respondent disallowed the $76,087 long-term capital loss carryover on petitioners' 1988 return.

OPINION

The next issue for our consideration is whether petitioners are entitled to a $76,087 long-term capital loss relating to purported investments in Buck Sales.  Petitioner argues that he spent approximately $76,000 in 1986 and early 1987 investigating an investment opportunity in Hong Kong.  Petitioner contends that such amounts are deductible as a long-term capital loss.  Respondent contends that petitioners have failed to establish that any of the payments are associated with any particular investment or business.  We agree with respondent.

Petitioner's testimony concerning his involvement with Buck Sales was vague and unconvincing.  At the conclusion of his testimony, it was not possible to understand the nature of

petitioner's relationship with Buck Sales or how the amounts spent by petitioner, such as the legal or consulting fees, related to a business or investment activity.  Petitioner claims that these amounts are deductible because they involved the investigation of a possible investment opportunity.  Section 212(1) or (2) permits a deduction for all ordinary and necessary expenses paid for the production or collection of income or maintenance of property held for the production of income.  However, expenses deductible under section 212(1) or (2) must relate to income-producing property or property rights in which the taxpayer has an existing interest.  Frank v. Commissioner, 20 T.C. 511, 514 (1953); Beck v. Commissioner, 15 T.C. 642, 670 (1950), affd. per curiam 194 F.2d 537 (2d Cir. 1952).  Petitioners have not shown that the expenditures petitioner made relate to income-producing property or property rights in which petitioner had an existing interest; therefore these expenses are not deductible under section 212(1) or (2).

Section 165(c)(2) authorizes a deduction for losses incurred by individuals and not compensated for by insurance or otherwise which are "incurred in any transaction entered into for profit".  Petitioner has not shown that the expenditures qualify for a deduction under section 165(c)(2).  Petitioner did not show whether he had a profit motive with respect to the expenditures.  He also failed to show that he was involved in a "transaction" as that term is used in the statute.  In Seed v. Commissioner, 52 T.C. 880, 885 (1969), it was explained that "the phrase 'a

transaction entered into for profit' surely means something more than the mere casual preliminary investigation of a prospective business or investment."  Although petitioner expended capital, he has failed to demonstrate what steps, if any, were taken beyond a preliminary investigation.  Petitioner's testimony on this subject was vague and, to some extent, incomprehensible.  Accordingly, petitioners are not entitled to a deduction under section 165(c)(2).  See Brown v. Commissioner, 40 T.C. 861, 869-870 (1963); see also Frank v. Commissioner, supra.

III.  Bad Debt Losses

FINDINGS OF FACT

In the early 1980's, petitioner formed a partnership with Albert J. Schara (Mr. Schara) for the purpose of buying and selling real estate.  Over the course of their partnership, petitioner made several loans to Mr. Schara or to partnerships controlled by him.  When the partnership dissolved in 1988, Mr. Schara had loans outstanding to petitioner totaling $147,000.  These loans were represented by three separate notes.  One note was given in exchange for two checks (a $50,000 check dated March 23, 1984, and a $5,000 check dated November 2, 1984) made payable to Schara Development Co., although Mr. Schara was personally liable for the entire debt.  Another note was in the principal amount of $136,024 and dated February 4, 1983.  This note represented several separate payments from petitioner to T. A. Investments, a partnership that was controlled by Mr. Schara.  Two payments totaling $56,000 were made on this note, reducing

the outstanding balance to $80,024.  A third note was in the principal amount of $12,000 and dated April 4, 1983.  This note represented several separate payments from petitioner to Nova Image, Inc.  Al Schara was the president of Nova Image, Inc.

The partnership between petitioner and Mr. Schara did not end amicably.  In December 1988, Mr. Schara filed a complaint against petitioners in the Superior Court of California for dissolution, partnership accounting, damages for repudiation of partnership, conversion of partnership assets, and breach of fiduciary duty.  In March 1989, petitioners filed a complaint against Mr. Schara in the Superior Court of California for breach of fiduciary duty and breach of contract.  The two lawsuits lasted for several years and were ultimately abandoned by both parties.  Petitioners claimed a $147,000 business bad debt loss on their 1989 return.  The loss was disallowed by respondent.

OPINION

Next we consider whether petitioners are entitled to $147,000 in business bad debts that were claimed on their 1989 return.  Respondent contends that petitioners have failed to prove (1) that these debts became worthless in 1989, and (2) that the items in question are business bad debts.  Petitioners failed to show worthlessness, and accordingly we need not address whether the items in question were business bad debts.

Section 166(a) allows taxpayers to deduct the value of bona fide debts that become worthless during the year.  Millsap v. Commissioner, 46 T.C. at 762.  Petitioners and Mr. Schara, the

debtor, were involved in litigation over the dissolution of their partnership and the allocation of partnership debts and assets. The litigation commenced in the year that petitioners claimed the debts became worthless (1989) and continued for several years thereafter.  The debts at issue in the litigation arose out of and were related to the partnership between petitioner and Mr. Schara.  The amount of the unpaid notes was claimed by petitioners to be business bad debts.  The uncertainty as to the outcome of that litigation is fatal to petitioners' claim that the debts became worthless in 1989.[2]  See <u>Barbour v. Commissioner</u>, 29 T.C. 1039 (1958); see also <u>Birnbaum & Manaker, P.C. v. Commissioner</u>, T.C. Memo. 1993-485.  Accordingly, petitioners are not entitled to the $147,000 bad debt deduction for 1989.

IV.  <u>1988 Capital Gains</u>

FINDINGS OF FACT

Petitioners' 1988 Federal income tax return reflected a $36,000 profit from the sale of one of the buildings that was owned by the Schara-Hagman partnership.  At trial, petitioners argued that they did not make a profit from the sale of the building.

---

[2] In addition, petitioners have not indicated whether the litigation between themselves and Mr. Schara had ceased by Sept. 30, 1993, when petitioners filed their 1989 return.

OPINION

Petitioners' 1988 return reflected a $36,000 profit from the sale of one of the buildings owned by the Schara-Hagman partnership. At trial, petitioners argued that they had estimated the amount of profit from the sale when they filed their 1988 return and that ultimately no profit was ever realized from the sale of the building. In addition, petitioners claim that they made approximately $25,000 in capital improvements to the building at issue, which were never taken into account in calculating the amount of gain on their 1988 return. Petitioners claim that they made the capital improvements by paying workers in cash. Respondent contends that petitioners have failed to demonstrate how their 1988 return overstated their capital gain. We agree with respondent.

Petitioners have not provided sufficient information to support a change to the $36,000 capital gain reported for 1988. Petitioners have not provided calculations showing that these alleged capital improvements were not already taken into account. In fact, there was no showing as to how petitioners computed their 1988 capital gains. Petitioners have not shown the adjusted basis of the building or the proceeds received from the sale. We also question why petitioners found it necessary to estimate the amount of profit from the sale of the building when they did not file their 1988 return until February 3, 1993. Petitioners have failed to establish that their 1988 return was inaccurate with respect to their capital gains. See Rule 142(a).

## V. Penalties and Additions to Tax

Section 6651(a)(1) imposes an addition to tax for the failure to file timely a required return unless the failure is due to reasonable cause and not due to willful neglect. Petitioners bear the burden of proving that their failure to file timely was due to reasonable cause and not to willful neglect. Rule 142(a).

Petitioners filed their 1988 Federal income tax return on February 3, 1993. The return was required to be filed on or before April 15, 1989. Petitioners have not shown that their delinquent filing was due to reasonable cause. Therefore, they are liable for the section 6651(a)(1) addition to tax for 1988 as determined by respondent.

For the 1988 taxable year, section 6653(a)(1) and (2) provides for an addition to tax equal to 5 percent of the underpayment if any part of an underpayment is due to negligence. For 1989, section 6662(a) and (b)(1) provides for an accuracy-related penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence or disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct, and the taxpayer has the burden of proving that the determination is erroneous. Rule 142(a). Therefore, petitioners must show that they were not negligent;

i.e, that they made a reasonable attempt to comply with the provisions of the Internal Revenue Code and that they were not careless, reckless, or in intentional disregard of the rules or regulations.

We sustain respondent's determination.  In determining whether petitioners were negligent in the preparation of their return, we take into account Mr. Hagman's years of business experience.  Glenn v. Commissioner, T.C. Memo. 1995-399, affd. without published opinion 103 F.3d 129 (6th Cir. 1996). Petitioners' explanation of the Buck Sales issue was vague and confusing, and they have failed to show that they were not negligent with respect to their $76,000 deduction for purported investments in Buck Sales.  Because we have found that part of petitioners' underpayment for 1988 was due to negligence, the 5-percent addition to tax provided in section 6653(a)(1) applies to the entire underpayment regardless of whether the balance of the underpayment was due to negligence.

Petitioners conceded part of the underpayment for 1989 and also failed to address the question of negligence on those concessions.  With respect to the disputed issue for 1989 (the bad debt deduction), petitioners claimed that the notes were worthless at a time when they were actively trying to collect on the notes in State court.  Petitioners do not provide us with a satisfactory explanation of this inconsistency and are therefore liable for the section 6662(a) accuracy-related penalty with respect to this issue.  Due to petitioners' failure to present

evidence or argument with respect to the conceded issues, the entire underpayment is subject to the section 6662(a) penalty.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>