T.C. Memo. 2006-272

UNITED STATES TAX COURT

W. BRADFORD DAVIS AND TEDDE M. RINKER, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6313-04.                    Filed December 26, 2006.

W. Bradford Davis, pro se.

<u>Bruce C. Janke</u>, for petitioner Tedde M. Rinker.[1]

<u>Christian A. Speck</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of

$40,109 in petitioners' 1999 Federal income tax as well as an

_____

[1]  Dr. Tedde M. Rinker was represented at trial by Kenneth
P. Fehl.  Mr. Janke entered an appearance in this case after the
close of trial, at which point the Court granted Dr. Rinker's
motion for an order granting leave to withdraw Mr. Fehl's
appearance on her behalf.

$8,022 section 6662 penalty.[2]  After concessions by both parties, the issues that remain for decision are:  (1) Whether petitioners are deemed to have admitted the statements in respondent's requests for admission by not timely responding to those requests, (2) whether petitioners are entitled to deduct expenses claimed on Schedule C, Profit or Loss From Business, in amounts greater than respondent allowed for petitioner Tedde M. Rinker's (Dr. Rinker) medical practice, (3) whether petitioners are entitled to deduct personal medical expenses incurred in 1999 and claimed on Schedule A, Itemized Deductions, (4) whether petitioners may deduct prepaid interest paid in 1999 in excess of the amounts conceded at trial by respondent, (5) whether petitioners may deduct amounts allegedly contributed to a SEP-IRA account in 1999, and (6) whether petitioners are liable for the penalty imposed under section 6662.[3]

---

[2]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]  Petitioner W. Bradford Davis attached to his pretrial memorandum a Form 8857, Request for Innocent Spouse Relief.  Mr. Davis did not file any briefs with the Court, and the petition makes no reference to sec. 6015 relief.  The record does not establish that he ever filed a Form 8857 with respondent. Therefore, assuming that Mr. Davis has even raised the issue, we find that he has abandoned his claim for sec. 6015 relief.  See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed their petition, petitioners resided in California.

For convenience, we have consolidated our findings of fact and opinion.

During 1999, petitioners were married. In 1999, Dr. Rinker carried on a medical practice in Burlingame, California. During 1999, W. Bradford Davis (Mr. Davis) worked for three employers, earning $104,583 in wages. At some point in 1999, Mr. Davis ended his employment with the last of those three employers, a company called Wind River, and was not employed by another concern for the rest of the year. Mr. Davis and Dr. Rinker have since divorced.

I. Deemed Admissions

On December 13, 2004, respondent served requests for admission on Mr. Davis and Dr. Rinker. Respondent filed the requests with the Court on December 14, 2004. The requests asked petitioners to admit two facts: (1) That Mr. Davis's 1999 photography activity was not entered into for profit, and (2) that the gross receipts of Dr. Rinker's medical practice were $120,531 in 1999.

The parties do not dispute that neither Mr. Davis nor Dr. Rinker timely responded to respondent's requests for admission. Counsel for Dr. Rinker did eventually serve a response to the requests for admission. The response was, as Dr. Rinker admitted, untimely.

Under Rule 90, a party may serve upon an opposing party a written request to admit the truth of any matters that relate to statements or opinions of fact or of the application of law to fact. Estate of Allensworth v. Commissioner, 66 T.C. 33 (1976); Hersch v. Commissioner, T.C. Memo. 1992-222. Each matter is deemed admitted unless the party to whom the request is directed serves a response on the requesting party within 30 days after the date of service of the request, or within such shorter or longer time as the Court may allow. Rule 90(c). When a matter is admitted, whether deemed admitted or actually admitted, it is conclusively established for the purposes of the pending case unless the Court on motion permits withdrawal or modification of the admission. Rule 90(f).

In her posttrial brief, Dr. Rinker argued that the Court should extend petitioners' time for responding to respondent's requests. Dr. Rinker argued that the Tax Court traditionally looks to the Federal Rules of Civil Procedure when interpreting its own Rules of Practice and Procedure and that under the Federal rules the period otherwise prescribed for responding to a

document is extended by 3 days if the document is served by mail. See Fed. R. Civ. P. 6(e).[4]

This Court does consult the Federal Rules of Civil Procedure when there is no applicable Tax Court Rule.  Rule 1(a).  When a Tax Court Rule has been derived from a Federal Rule of Civil Procedure, we also look to the principles enunciated by the Federal courts in the interpretation and application of the Federal Rules of Civil Procedure.  See Evans Publg., Inc. v. Commissioner, 119 T.C. 242, 249 (2002); Estate of Fulmer v. Commissioner, 83 T.C. 302, 309 (1984).  But Congress enacted section 7453 to authorize the Tax Court to "prescribe" "rules of practice and procedure", and we have acted on that authority by promulgating and applying the Tax Court Rules of Practice and Procedure.  Those Rules, and not the Federal rules, apply to all cases and proceedings before this Court.  Rule 1(a).  Indeed, we have responded to the concerns underlying rule 6(e) of the Federal Rules of Civil Procedure with Rule 25(a).  That Rule provides that if service is made by mail, then a period of time computed with respect to the service shall begin on the day after the date of mailing.  Applying our Rules, it is clear that Dr.

---

[4]  In support of this argument, Dr. Rinker also cited the California Code of Civil Procedure, which contains a similar provision.  The California Code is not an authority with respect to the Tax Court's Rules of Practice and Procedure.

Rinker did not timely respond to respondent's requests for admission.

Dr. Rinker also argues that respondent's first request for admission--that Mr. Davis's photography activities were not entered into for profit--is improper because it requests admission of a matter of law, not fact.  That is not correct.  Whether a taxpayer is primarily engaged in an activity for profit is a question of fact to be resolved from all relevant facts and circumstances.  King v. Commissioner, 116 T.C. 198, 205 (2001); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. per curiam without published opinion 647 F.2d 170 (9th Cir. 1981).

At no point did petitioners request that the Court extend the time for responding to respondent's requests.  Nor did either petitioner move to withdraw or modify the deemed admissions despite ample opportunity to do so.  The matters in respondent's requests for admission are therefore deemed admitted.[5]

II.  Business Deductions for Dr. Rinker

   A.  Generally

Petitioners claimed $102,265 of business expenses for Dr. Rinker's medical practice on Schedule C of their 1999 return.

---

[5]  We do note, however, that in the notice of deficiency, respondent allowed $5,700 of deductions for Mr. Davis's photography expenses--an amount which fully offset his claimed income from photography.  Respondent also adjusted Dr. Rinker's gross receipts to the amount in the requests for admission solely on the basis of records created and maintained by Dr. Rinker.

Respondent disallowed $60,509 of the claimed deductions because petitioners were unable to substantiate the existence and business purpose of most of the deductions.

Preliminarily, we note that several issues in the dispute regarding these deductions revolve around petitioners' inability to produce the source documents on which their 1999 income tax return was allegedly based. Petitioners engaged Howard Hertz (Mr. Hertz) to prepare their 1999 return. Mr. Hertz also represented petitioners during the subsequent examination of the 1999 return. Dr. Rinker alone assisted Mr. Hertz in preparing the 1999 return and in gathering documents for the subsequent examination of that return. Dr. Rinker claimed that she gave the documents which substantiated many of the figures on petitioners' 1999 tax return to Mr. Hertz after Dr. Rinker, Mr. Hertz, and Dr. Rinker's assistant organized the records at Dr. Rinker's home one evening in 2002. Dr. Rinker claims that Mr. Hertz then lost the documents while the examination was being reviewed by respondent's Appeals officer. Mr. Hertz testified that he never left Dr. Rinker's home with the source documents after their meeting in 2002. Respondent takes the position that petitioners, and not Mr. Hertz, lost the records, or that they never maintained the records to begin with.

As was true in Diaz v. Commissioner, 58 T.C. 560, 564 (1972):

This case epitomizes the ultimate task of a trier of the facts--the distillation of truth from falsehood which is the daily grist of judicial life. He must be careful to avoid making the courtroom a haven for the skillful liar or a quagmire in which the honest litigant is swallowed up. Truth itself is never in doubt, but it often has an elusive quality which makes the search for it fraught with difficulty. That this is so is clearly illustrated by the situation herein.
* * *

We decide whether a witness is credible on the basis of objective facts, the reasonableness of the testimony, and the demeanor of the witness. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Dozier v. Commissioner, T.C. Memo. 2000-255.

From our observation of petitioners at trial, we found Dr. Rinker's testimony on this point to be credible, sufficiently detailed, and reasonable. Dr. Rinker's demeanor on the stand was forthright and earnest. While petitioners at times lacked detailed memories of some of their financial activities in 1999, Dr. Rinker recalled her meeting with Mr. Hertz at her house in 2002 with relative precision. She testified that at the conclusion of that meeting, she gave Mr. Hertz a box containing the bulk of her source documents, and that she never saw them again.

Mr. Hertz testified that he gave the box of records back to Dr. Rinker at the conclusion of that meeting. According to Mr. Hertz's testimony, the entire purpose of the meeting was to

organize documents for Mr. Hertz to present to respondent's Appeals officer. However, Mr. Hertz admitted that he may have kept the box of documents after his meeting with respondent's Appeals officer.

In contradistinction to Dr. Rinker's, Mr. Hertz's testimony was not persuasive. Mr. Hertz testified that he showed the source documents, which were voluminous, to the revenue agent conducting the exam. Yet the revenue agent recalled seeing only a few receipts and canceled checks. Mr. Hertz lacked any detailed memory of when he last possessed petitioners' source documents and was unable to recall basic facts of the chronology and events of his representation of petitioners.

We therefore find that Mr. Hertz, and not petitioners, lost the box of petitioners' original documents.

Petitioners prayed that the Court excuse their inability to produce most of their contemporaneous records on the grounds that Mr. Hertz, and not petitioners, lost most of their records. Petitioners asked the Court to allow deductions for Dr. Rinker's business expenses on the basis of Dr. Rinker's testimony and the documents that they were able to produce at trial under the rule in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). They also argue that they should be allowed to deduct business expenses to which section 274 applies because they have satisfied the substantiation requirements of section 1.274-5T(c)(5),

Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985), which allow taxpayers to reasonably reconstruct their business expenses when original documents are lost or destroyed through no fault of the taxpayers.

Respondent argues that petitioners failed to present credible evidence to substantiate that they incurred business expenses in excess of the amount allowed by the notice of deficiency, and that petitioners have not provided the Court with a sufficient basis on which to make a Cohan estimation. Also, respondent argues that several of the claimed deductions were for nondeductible, personal expenses. Finally, respondent argues that petitioners have not met the heightened substantiation burden imposed by section 274 for those deductions to which section 274 applies.

At trial, petitioners managed to produce a smattering of canceled checks, receipts, and other records from 1999. Petitioners also presented exhibits containing reconstructions of various categories of expenditures for 1999 that Dr. Rinker made with the computer program Quicken (Quicken reports). In their testimony, petitioners related to the Court their memories of their financial activities during 1999, the transactions underlying the source documents, and the way they arrived at the amounts contained in their 1999 return and in the exhibits they prepared in anticipation of trial.

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Generally, no deduction is allowed for personal, living, or family expenses, nor is deduction proper for expenditures that are properly categorized as capital expenditures. See secs. 262 and 263. The taxpayer bears the burden of proving that he or she is entitled to the deduction. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).[6]

When a taxpayer establishes that he or she has incurred deductible expenses but is unable to substantiate the exact amounts, we can estimate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate. See Cohan v. Commissioner, supra at 543-544; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In estimating the amount allowable, we bear heavily upon the taxpayer where the inexactitude of the record is of his or her own making. See Cohan v. Commissioner, supra at 544.

It is well established that the Tax Court may permit a taxpayer to substantiate deductions through secondary evidence where the underlying documents have been unintentionally lost or destroyed. Boyd v. Commissioner, 122 T.C. 305, 320-321 (2004);

---

[6] Petitioners do not contend, nor have they shown, that sec. 7491(a), which shifts the burden of proof to the Commissioner in some circumstances, applies to this case.

<u>Malinowski v. Commissioner</u>, 71 T.C. 1120, 1125 (1979); <u>Furnish v.</u> <u>Commissioner</u>, T.C. Memo. 2001-286; <u>Joseph v. Commissioner</u>, T.C. Memo. 1997-447; <u>Watson v. Commissioner</u>, T.C. Memo. 1988-29. Moreover, even though Congress imposed heightened substantiation requirements for some business deductions by enacting section 274, the regulations under that section allow a taxpayer to substantiate a deduction by reasonable reconstruction of his or her expenditures when records are lost through no fault of the taxpayer. Sec. 1.274-5T(c)(5), Temporary Income Tax Regs., <u>supra</u>.

Generally, we found Dr. Rinker's testimony honest, forthright, and credible. Although Dr. Rinker seemed somewhat unfamiliar with financial matters, her testimony fundamentally corresponded with the original documentation and reconstructions that petitioners provided. She testified credibly as to the existence and business purpose of many of the deductions claimed on petitioners' 1999 return with respect to her medical practice. For some of those deductions, Dr. Rinker was also able to recall the approximate amounts of her expenses, but for many of them, Dr. Rinker lacked any independent recollection of the amounts of the claimed deductions.

Where Dr. Rinker's testimony provided a sufficient basis for the Court to estimate the amounts of her expenditures, we have done so, weighing against petitioners' inexactitude where

appropriate. Where petitioners presented contemporaneous documents, we have allowed the claimed amounts after adjusting for any disparities between the documents and Dr. Rinker's testimony and for computational errors. Similarly, where the original documents were lost by Mr. Hertz, but where petitioners presented credible reconstructions of their expenses which carry their burden of proof, we have allowed the claimed amounts after adjusting for minor errors and discrepancies.

B. Particular Deductions

1. Office Liability Insurance

Dr. Rinker testified that she paid for tort liability insurance for her medical office. Dr. Rinker testified that during 1999 her expenses for liability insurance may have been about $250. Premiums paid for business liability insurance are deductible business expenses. Sec. 1.162-1(a), Income Tax Regs. Under Cohan v. Commissioner, supra at 544, we allow a deduction of $125.

2. Malpractice Insurance

Dr. Rinker submitted a receipt for medical malpractice insurance in the amount of $2,385. The receipt was marked as "paid" and dated January 31, 1999, and the policy apparently covered February 1, 1999, through February 1, 2000. Medical malpractice insurance premiums are deductible business expenses. Sec. 1.162-1, Income Tax Regs. Although the year-long insurance

contract extends through a small portion of the next taxable year, petitioners as cash method taxpayers may nonetheless currently deduct the entire expenditure. <u>Kauai Terminal, Ltd. v. Commissioner</u>, 36 B.T.A. 893 (1937); sec. 1.461-1(a)(1), Income Tax Regs. Petitioners are therefore entitled to a deduction of $2,385 for Dr. Rinker's medical malpractice insurance premiums.

### 3. <u>Disability Insurance</u>

Dr. Rinker testified that she carried a disability insurance policy on herself. She testified that the reason she carried the policy was to keep her practice afloat should she become unable to see her patients for an extended period, and that the policy amount would cover only the most basic expenses of her business.

This Court has long held that a taxpayer may not deduct his or her disability insurance premium payments as business expenses when no limitation is placed on the use of proceeds from the policy. <u>Blaess v. Commissioner</u>, 28 T.C. 710 (1957); <u>Ferris v. Commissioner</u>, T.C. Memo. 1986-32; <u>Andrews v. Commissioner</u>, T.C. Memo. 1970-32. A taxpayer's "mere declaration of his intent" to apply potential proceeds from a disability insurance policy towards office expenses in the event of the taxpayer's disability does not convert an otherwise personal expenditure into a deductible business expense. <u>Blaess v. Commissioner</u>, <u>supra</u> at 715-716. We therefore deny petitioners a deduction for disability insurance premium payments.

4. Payments to Employees and Contractors

Petitioners submitted exhibits with copies of canceled checks written by Dr. Rinker to several payees in 1999. Dr. Rinker testified that the checks represented payments from her to several people for legal, accounting, bookkeeping, and secretarial services rendered in connection with her medical practice. Some of the payments were made in exchange for secretarial and bookkeeping expenses which related directly to Dr. Rinker's practice at that time; others were made in exchange for legal and business advice on a future venture proposed to Dr. Rinker by another doctor. According to Dr. Rinker's uncontradicted testimony, the proposed venture never materialized and she ceased pursuing it. In her testimony, Dr. Rinker admitted that some of the checks in the exhibits were not for professional services at all and were mistakenly included. In addition, Dr. Rinker also admitted that she engaged the same people to do her personal and business bookkeeping and accounting.

a. Fees for Advice on the Proposed Venture

We conclude that Dr. Rinker's payments to financial and legal advisers were not ordinary and necessary expenses of Dr. Rinker's medical practice as it stood in 1999. The evidence does not establish that the proposed venture was related to Dr. Rinker's current business. Petitioners are therefore not

entitled under section 162 to deductions for these payments as ordinary and necessary expenses incurred in carrying on Dr. Rinker's medical practice.  See Hagman v. Commissioner, T.C. Memo. 1999-42.  Nor does the record establish that Dr. Rinker abandoned her pursuit of the proposed venture during 1999.  Her payments to financial and legal advisers are therefore not deductible in that year pursuant to section 165.  See sec. 165(c)(2); Hagman v. Commissioner, supra.

   b. Payments to Secretaries and Bookkeepers

 Dr. Rinker testified that she engaged several people for temporary secretarial work, bookkeeping, and accounting in 1999. At trial, Dr. Rinker was unable to recall how much she paid her secretaries, except that in most cases she believed she paid each of them less than $600.  Dr. Rinker did recall, however, that she hired bookkeepers for $25 an hour, and that they usually worked 6 or 7 hours per week.  On cross-examination, Dr. Rinker admitted that she engaged the same people to perform bookkeeping and tax accounting services for both her business and personal needs.

 Petitioners presented canceled checks written by Dr. Rinker in 1999 made out to the people about whom she testified.  In the memo section of most of those checks, Dr. Rinker had written notes identifying the services underlying the payments, such as "12.5 hours bookkeeping" or "temp. office" or "sec. services." However, Dr. Rinker admitted that one of the checks in the

exhibits was mistakenly included and did not represent a payment for professional or office services.

The checks for secretarial services related to Dr. Rinker's medical practice amount to $1,442. Petitioners are entitled to a deduction under section 162 for that amount.

The checks for bookkeeping and accounting services add up to $2,582. Dr. Rinker testified that she paid some of these amounts for services performed for her medical practice, but petitioners offered no evidence as to what portion of the payments related to services performed for her in her personal capacity. On the basis of Dr. Rinker's testimony, we believe that at least half of the fees related to Dr. Rinker's medical practice. Under Cohan v. Commissioner, 39 F.2d at 544, we allow a deduction of $1,291.

### 5. Medical Management Solutions

Dr. Rinker testified that she engaged an outside billing service called Medical Management Solutions to collect and manage payments from medical insurance companies. At trial, petitioners presented an exhibit listing payments to Medical Management Solutions. Petitioners also presented an additional check made out by Dr. Rinker to the company which was not included in the exhibit. The payments to Medical Management Solutions for billing services are deductible business expenses under section 162. We therefore allow a deduction for the amounts shown by the exhibit and the additional check, totaling $11,300.

6. Office Rent

Dr. Rinker testified that she paid office rent to two different sublessors in 1999. She estimated that she paid the first of those sublessors between $790 and $800 a month from January through September 1999, and that she paid the second sublessor between $800 and $1,000 per month for the rest of 1999.

Office rent is a deductible expense. Sec. 162(a)(3). Under Cohan, we allow a deduction of $9,600.

7. Repairs

Dr. Rinker testified about two expenditures for alleged repairs she incurred in maintaining her medical office in 1999. Dr. Rinker hired a technician two times to fix her office computers in 1999, paying approximately $400 for each visit. Also, Dr. Rinker hired Levi Moore, a builder, to construct countertops and cupboards in her office. Dr. Rinker testified that the construction work cost $2,500.

Petitioners argue that payments to Levi Moore for the construction of countertops and cupboards in Dr. Rinker's office are deductible expenses. That argument is incorrect. Generally, under section 263, no deduction is allowed for capital expenditures. Capital expenditures include any amount paid for permanent improvements or betterments made to increase the value of any property. Sec. 263(a)(1). Particularly, the cost of constructing furniture and fixtures or similar property having a

useful life substantially beyond the taxable year is a capital expenditure.  Sec. 1.263(a)-2(a), Income Tax Regs.  Petitioners are therefore not entitled to a deduction for payments to Levi Moore.  Petitioners have not raised--and we do not address-- whether Dr. Rinker is entitled to capitalize and depreciate the cost of the improvements made by Levi Moore.

Petitioners also argue that payments to the computer technician were deductible repair expenses.  Under section 1.162-4, Income Tax Regs.,

> The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense * * *.  Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept.

Petitioners have not provided the Court with sufficient evidence to determine whether the work done by the technician should be deducted as a current expense or capitalized into the cost of Dr. Rinker's office computer and depreciated.  Therefore, petitioners are not entitled to a deduction for the technician's fees.  See Rule 142(a).  Petitioners have not raised the issue of whether they are entitled to a deduction for depreciation or amortization with respect to the equipment.  We therefore do not address it.

8. Supplies

Petitioners presented an exhibit listing expenses for patient supplies incurred in connection with Dr. Rinker's medical practice. The exhibit contained some of Dr. Rinker's financial records, invoices from a company named MedQuest Pharmacy, and two checks written by Dr. Rinker. The exhibit showed total expenditures of $8,117.80. Dr. Rinker testified that the records related to purchases of drugs and hormones for her patients. At trial, Dr. Rinker admitted that one of the two checks in the exhibit was miscategorized and actually represented a personal medical expenditure. The other check appears to duplicate a payment recorded on one of the invoices.

A doctor's expenditures for her patients' medical supplies are deductible under section 162. Sec. 1.162-6, Income Tax Regs. Eliminating the payment for personal medical supplies and the duplicate payment, we allow a deduction of $6,801.11 for Dr. Rinker's purchases from MedQuest.

Petitioners also presented an exhibit purporting to substantiate office expenditures Dr. Rinker incurred during 1999. This exhibit contained canceled checks that Dr. Rinker wrote out to various payees, including consumer retailers such as Costco and Office Depot, during 1999. The checks contained the following information:

| No.  | Payee            | Amount   | Memo                                          |
|------|------------------|----------|-----------------------------------------------|
| 2001 | Victoria Pickett | $6.00    | Palm pilot case                               |
| 2093 | Giovane          | 148.60   | Supplies reimbursement                        |
| 8087 | Cost Plus        | 702.27   | Office furniture                              |
| 8234 | Fry's Electronics| 625.38   | Offc equipment fax printer                    |
| 8259 | Andy Musgrave    | 202.50   | (Illegible)                                   |
| 8332 | Labels Dept 6657 | 11.90    | Labels stionary (sic)                         |
| 9002 | Office Max       | 39.34    | Writing pads, pens                            |
| 9035 | Computerware     | 97.39    | USB cable                                     |
| 9061 | Costco           | 411.86   | Food, office $50.89 for ofc suppl.            |
| 9108 | Office Depot     | 83.73    | Supplies, fax, etc.                           |
| 9167 | Price Costco     | 472.59   | $188.50 Supplies Costco member supplies & gifts |

Dr. Rinker testified that the checks related to purchases of office supplies for her medical practice, but that in several of the transactions she had also purchased items for personal use as well. In the "memo" section of some of those checks, Dr. Rinker specified the portion of the payment that represented a business expenditure, but on other checks, the "memo" section was blank or illegible, or did not specify the purpose and nature of the purchase.

All of the retail payees listed in the exhibit sell goods that can be used for both business and personal purposes. Moreover, for those checks written to individuals, the items that Dr. Rinker purchased can be used for both business and personal purposes.

As noted supra, no deduction is generally allowed for personal, living, or family expenses. Sec. 262. To show that an

expense was not personal, the taxpayer must show that the expense was incurred primarily to benefit his business and that there was a proximate relationship between the claimed expense and the business. <u>Walliser v. Commissioner</u>, 72 T.C. 433, 437 (1979).

Dr. Rinker testified as to the business purpose of some of the expenditures, and the notes on the checks set forth an adequate basis for allowing some deduction for purchases of office supplies. At least two of the checks written to Fry's Electronics for $625.38 and to Cost Plus for $702.27 represent a purchase of assets the cost of which should be capitalized, not deducted. See sec. 1.263(a)-2(a), Income Tax Regs. We therefore allow petitioners deductions for the full amount of check No. 2093, as well as for portions of check Nos. 9061 and 9167, which represent deductible business expenditures. These amount to deductions of $387.99 in total.

### 9. Child Care Expenses

At trial and on the brief, petitioners asserted that they paid $8,951 for day care expenses of Dr. Rinker's two children. Dr. Rinker testified that she would not have been able to conduct her medical practice without placing her children in day care. Petitioners argued that the day care expenditures were deductible business expenses.

We have consistently held that two-earner married couples may not deduct, as a business expense under section 162, the cost

of care for their child during working hours.  See, e.g.,
O'Reilly v. Commissioner, T.C. Memo. 1974-261 (and cases cited
therein).  Congress has enacted a separate credit for child care
expenses, which is currently embodied in section 21.  Indeed,
petitioners took advantage of that provision to claim a $30
credit on their 1999 tax return in addition to their Schedule C
deductions.  However, the rule set forth in O'Reilly still
stands, and petitioners may not deduct the costs of child care as
section 162 expenses.

    10.  Bank Charges

Dr. Rinker testified that she incurred charges for the
processing of patients' credit card payments and for maintaining
her business checking accounts.  Petitioners provided no evidence
of the amounts of those bank charges.  At trial, Dr. Rinker was
unable even to estimate the bank charges she incurred in 1999.
We therefore lack a sufficient basis upon which to estimate an
appropriate deduction.  See Cohan v. Commissioner, 39 F.2d at
544.

    11.  Dues

Dr. Rinker testified that she paid dues and licensing fees
to several organizations related to her medical practice in 1999.
Dr. Rinker was unable to recall the precise amounts, but she
estimated that her State medical license fee for 1999 was $500
and that she paid dues to several medical colleges and

associations of approximately $1,185. On their 1999 return, petitioners deducted $700 for "Taxes and licenses" on the Schedule C for Dr. Rinker's medical practice. Respondent allowed this amount in full. It appears likely that petitioners included the cost of Dr. Rinker's medical license fee in the deduction for "Taxes and licenses." Petitioners have therefore not established that they paid any amount relating to Dr. Rinker's medical license in excess of the amount respondent allowed. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Dues to professional organizations are generally deductible under section 162. Sec. 1.162-6, Income Tax Regs. Pursuant to Cohan v. Commissioner, supra at 544, we allow a deduction of $550 for the remaining expenditures for Dr. Rinker's professional dues.

### 12. Internet Services

Dr. Rinker testified that she paid approximately $24 per month for Internet access in 1999. She testified that she maintained the account so that she could communicate with patients via e-mail, but that she also used the account for personal purposes. Dr. Rinker also testified that she paid another charge in connection with her business use of the Internet, but she could not recall whether she incurred the charge in 1999 or 2000.

Petitioners did not offer evidence to demonstrate any allocation of Dr. Rinker's Internet fees between personal and business uses. Petitioners have therefore not provided the Court with an adequate basis upon which to make a Cohan estimation, and we allow petitioners no deduction for the claimed expenditures. See Cohan v. Commissioner, supra at 544.

13. Office Cleaning

On their Schedule C for Dr. Rinker's medical practice for 1999, petitioners claimed a deduction of $598 for cleaning services. Dr. Rinker testified that she engaged a cleaning service company to clean both her office and her home during 1999, and that her total payments to the cleaning service exceeded $5,000. Dr. Rinker testified that she based the $598 figure on the number of times the service visited her office and the amount of the weekly payments she made to the company in 1999.

Dr. Rinker's expenditures for office cleaning were ordinary and necessary expenditures directly connected with her medical practice. See sec. 1.162-1, Income Tax Regs. We therefore allow a deduction of $598.

14.  Deductions to Which Section 274 Applies

a.  Car and Truck Expenses

On their 1999 Schedule C for Dr. Rinker's medical practice, petitioners claimed deductions for car and truck expenses of $6,077.  Respondent disallowed the deduction.

Certain business deductions described in section 274 are subject to strict rules of substantiation that supersede the doctrine in Cohan v. Commissioner, supra at 544.  See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Section 274(d)(4) disallows deductions with respect to "listed property" unless the taxpayer satisfies the section 274 substantiation requirements.  Under section 280F(d)(4)(A)(i), "listed property" includes, among other items, passenger automobiles.  If a taxpayer cannot satisfy the substantiation burden imposed by section 274(d) with respect to a deduction to which it applies, he fails to carry his burden of establishing that he is entitled to deduct that expense, regardless of any equities involved.  Sec. 274(d); Nicely v. Commissioner, T.C. Memo. 2006-172; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Generally, taxpayers must substantiate each required element of an expenditure or use. Sec. 1.274-5T(b)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  For deductions stemming from uses of listed property, the elements that must be substantiated include

the amount of each business use (using mileage or other approved measures) as well as the total use of the listed property for the taxable period; the date of the use; and the business or investment purpose of the use.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Where section 274 applies, a taxpayer must substantiate the expenditure by "adequate records" or by "sufficient evidence corroborating the taxpayer's own statement".  Sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs.  The "adequate records" requirement is generally satisfied where a taxpayer presents documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support deduction of an expenditure.  Sec. 1.274-5(c)(2)(iii), Income Tax Regs.  For deductions relating to uses of listed property, a taxpayer may also satisfy the "adequate records" requirement by maintaining an account book, diary, log, statement of expense, trip sheets, or similar record, and documentary evidence which, in combination, are sufficient to establish each required element of an expenditure or use to which section 274(d) applies.  Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

If a taxpayer has not substantially complied with the "adequate records" standard, he may substantiate an element of an expenditure by presenting "sufficient evidence corroborating the

taxpayer's own statement." Sec. 274; sec. 1.274-5T(c)(1) and (3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). That requirement is satisfied where a taxpayer presents both his own statement containing specific information in detail as to the element, as well as other corroborative evidence sufficient to establish the element. Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., supra. Generally, the corroborative evidence must be direct evidence, such as a statement in writing or the oral testimony of witnesses involved in the deductible event, or documentary evidence such as described in section 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985). In proving the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence. Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., supra.

In lieu of substantiating the actual amount of an expenditure relating to the business use of a passenger automobile, a taxpayer may use a standard mileage rate established by the Internal Revenue Service. See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 98-63, 1998-2 C.B. 818. Use of the standard mileage rate establishes the amount deemed expended with respect to the business use of a passenger automobile, but such use does not relieve a taxpayer of his burden of substantiating the other elements required by section

274 and the regulations issued thereunder.  Sec. 1.274-5(j)(2), Income Tax Regs.

At trial, Dr. Rinker testified that she used her car to travel to various business appointments and business-related events in 1999.  Dr. Rinker testified that she documented her business travel mileage in her appointment book, which also contained the names of her patients.  However, Dr. Rinker did not think it prudent to offer her 1999 appointment book as evidence because she was concerned that doing so might violate her duty of confidentiality towards her patients.  Instead, petitioners presented a computer report that Dr. Rinker prepared in connection with the examination of the return which purported to summarize the contents of her 1999 appointment book.  That document purported to show that Dr. Rinker traveled 3,740 miles in connection with her medical practice.

Petitioners have not satisfied the "adequate records" standard.  Petitioners have not presented documentary evidence such as receipts, paid bills, or other direct evidence of the required elements.  Petitioners have not presented a log book or other similar record made at or near the time of the expenditures at issue.  Nor may the Court excuse petitioners' failure to produce Dr. Rinker's appointment book because of Dr. Rinker's concern for her clients' confidentiality.  Section 1.274-5T(c)(2)(ii)(D), Temporary Income Tax Regs., 50 Fed. Reg. 46019

(Nov. 6, 1985), provides a way to maintain the confidentiality of information when recording the elements of business mileage in a log book or similar document:

> Confidential information.--If any information relating to the elements of an expenditure or use, such as place, business purpose, or business relationship, is of a confidential nature, such information need not be set forth in the account book, diary, log, statement of expense, trip sheet, or similar record, provided such information is recorded at or near the time of the expenditure or use and is elsewhere available to the district director to substantiate such element of the expenditure or use.

As respondent noted--albeit in another context--petitioners could have satisfied this requirement by photocopying Dr. Rinker's appointment book and redacting her clients' names. Petitioners failed to do so.

Petitioners have not presented any evidence to corroborate Dr. Rinker's statements regarding her business mileage. They have therefore failed to substantiate any such expenses. We allow no deduction for business mileage.

### b. Business Travel Away From Home

Petitioners deducted $7,018 for business travel away from home and $988 for business meals and entertainment. Respondent disallowed all but $362 of the claimed deductions for travel. Respondent made no adjustment to petitioners' deduction for meals and entertainment of $988.

The heightened substantiation requirements of section 274 apply to deductions for travel expenditures. Sec. 274(d)(1). Under section 274(d)(1), the elements that must be substantiated to deduct such expenses generally include the amount of each separate expenditure, the dates of departure and return for each trip away from home and the number of days away from home spent on business, the destinations or places to which the taxpayer traveled, and the business purpose of the travel. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). As with other deductions to which section 274 applies, taxpayers must generally substantiate deductions for business travel away from home with "adequate records" or "sufficient evidence corroborating the taxpayer's own statement", discussed supra. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

Petitioners attempted to substantiate a portion of the claimed business travel deductions in 1999. Petitioners presented a Quicken report containing Dr. Rinker's travel expenditures in 1999, and Dr. Rinker testified that some of the travel expenditures on the report related to business trips that she took to attend various medical conferences. In her testimony, Dr. Rinker specified which trips on the report were business travel and detailed the business activities she engaged in during those trips.

Petitioners have not met the generally applicable substantiation requirements of section 274. Petitioners have not presented documentary evidence such as receipts, paid bills, or other direct evidence of the required elements. Petitioners failed to present any independent corroboration of Dr. Rinker's statements which would substantiate the required elements of Dr. her business travel deductions. Petitioners have therefore failed to substantiate the claimed deductions with either "adequate records" or "sufficient evidence corroborating the taxpayer's own statement." However, petitioners argue that because Mr. Hertz lost their tax records for 1999, they should be allowed to substantiate Dr. Rinker's business travel expenses under section 1.274-5T(c)(5), Temporary Income Tax Regs., supra. We agree.

Section 1.274-5T(c)(5), Temporary Income Tax Regs., supra, provides taxpayers with a method of substantiating their section 274 deductions when their records have been lost because of circumstances beyond their control. Where a taxpayer establishes that the failure to produce adequate records is due to the loss of those records through circumstances beyond the taxpayer's control, the taxpayer may substantiate a deduction by reasonable reconstruction of his expenditures or use. Id. If documentation is unavailable, the Court may, although it is not required to do so, accept the taxpayer's testimony to substantiate the

deduction.  See <u>Boyd v. Commissioner</u>, 122 T.C. at 320; <u>Watson v.
Commissioner</u>, T.C. Memo. 1988-29.

Petitioners have shown that they at one time possessed
adequate documentation to establish the required elements for
deducting Dr. Rinker's business travel expenditures.  Petitioners
have also shown that their failure to produce those records
stemmed from circumstances beyond their control; namely, that Mr.
Hertz lost the records.  Petitioners have also provided a
reasonable reconstruction of some of Dr. Rinker's expenditures
for business travel away from home in 1999.  We therefore allow
petitioners' deductions for which petitioners have provided
adequate reconstructions of Dr. Rinker's deductible business
travel expenditures.

Deductible traveling expenses include travel fares, meals
and lodging, and expenses incident to travel.  Sec. 1.162-2(a),
Income Tax Regs.  From the record before us, petitioners have
reconstructed the following deductible travel expenses:

| Date | Nature of Expenditure | Destination | Business Purpose | Amount |
|------|-----------------------|-------------|------------------|--------|
| 2/2 | Fuel | Las Vegas | American Academy of Anti-Aging Medicine conference | $19.46 |
| 4/26 | Hotel | Fresno | University pharmacy conference | 77.28 |
| 4/27 | Car rental | Fresno | University pharmacy conference | 22.20 |
| 4/27 | Hotel | Fresno | University pharmacy conference | 219.02 |
| 6/11 | Hotel | San Francisco | Psychiatry conference | 285.36 |

| 10/25 | Car rental | San Francisco | American Osteopathic Association convention | 103.97 |
| 11/17 | Hotel | San Francisco | American Osteopathic Association | 109.00 |
| | Total | | | $836.29 |

We therefore allow a deduction for $836.29.

## III. Schedule A Deductions

### A. Personal Medical Expenditures

On their 1999 tax return, petitioners claimed medical and dental expenditures of $18,659, of which $11,693 was allegedly deductible.[7] Respondent denied the deduction.

At trial, petitioners offered another Quicken report which purported to contain their medical expenses for 1999. The report showed several payments from petitioners' bank accounts, the amounts of the payments, the payees, and some details about the payments and their purposes. Dr. Rinker testified that while she and Mr. Davis had medical insurance for their family in 1999 through Mr. Davis's employers, the report included only those medical expenses which were not reimbursed through their medical insurance policy. Many of the entries on the Quicken report contain notes such as "not covered", "co pay", or "copayment".

Section 213(a) generally allows a deduction for expenses paid during a taxable year, not compensated for by insurance or

---

[7] As discussed below, sec. 213 allows a deduction for medical or dental expenses to the extent that they exceed 7.5 percent of adjusted gross income.

otherwise, for medical care of the taxpayer, his or her spouse, or dependents, to the extent that such expenses exceed 7.5 percent of adjusted gross income.

As noted above, taxpayers bear the burden of proving that they are entitled to any deductions claimed on their return, see Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992), and taxpayers must substantiate amounts claimed as deductions by maintaining the records necessary to establish such entitlement.[8]  See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87 (1975); sec. 1.6001-1(a), Income Tax Regs.  To substantiate medical and dental expenses under section 213, the taxpayer must furnish the name and address of each person to whom payment was made and the amount and date of each such payment.  See sec. 1.213-1(h), Income Tax Regs.  If requested by the Commissioner, the taxpayer must also furnish an itemized invoice which identifies the patient, the type of service rendered, and the specific purpose of the expense.  See id.  Where a taxpayer fails to provides adequate substantiation, the Court may uphold the Commissioner's determination denying a deduction for medical and dental expenses.  See Hunter v. Commissioner, T.C. Memo. 2000-249; Nwachukwu v. Commissioner, T.C. Memo. 2000-27.

---

[8]  Petitioners do not argue, and we do not find, that sec. 7491(a) applies.  See supra note 6.

Petitioners' evidence regarding their medical expenses is confusing, contradictory, and incomplete, and we are not convinced that the expenditures in petitioners' Quicken report represent deductible medical expenses. Mr. Davis, who required hearing aids during 1999, testified that his expenses for hearing aids were reimbursed by a special fund set up by his employer--yet, judging from the Quicken report, over $800 of the medical expenses went towards Mr. Davis's hearing aids. Petitioners claim to have had employer-provided medical insurance in 1999, yet they reported over $18,000 in unreimbursed medical expenses on their tax return and showed only $357 of insurance reimbursements at trial. Dr. Rinker attempted to explain this by testifying that she excluded from the Quicken report those medical expenses which were reimbursed by insurance. But both the report itself and Mr. Davis's testimony indicate otherwise. The Quicken report includes entries for insurance reimbursements, and Mr. Davis testified that petitioners' insurance covered all expenditures for prescription drugs except a minimal copayment. Contrary to Dr. Rinker's testimony, the Quicken report includes several entries for prescription medications costing hundreds of dollars each.

Moreover, several of the expenditures on the Quicken report appear to relate to procedures that may have been cosmetic in nature or to purchases of vitamins and nonprescription drugs. Those expenditures are not deductible. Sec. 213(d)(9)(A) and (B),

(b).  Finally, the Quicken report, even when coupled with petitioners' testimony, does not satisfy the requirements imposed by section 1.213-1(h), Income Tax Regs.[9]  We therefore disallow the deduction for medical expenses for 1999.

B.  Personal Interest

Petitioners deducted $20,903 of interest related to the refinancing of their home mortgage.  Respondent denied the deduction.

Petitioners refinanced a preexisting home mortgage loan on December 17, 1998.  The terms of the December 17, 1998, refinance loan (the 1998 loan) required petitioners to pay a $7,500 "loan origination fee" at the inception of the 1998 loan.  The stated term of the 1998 loan was apparently 30 years.  However, on March 28, 2000, petitioners again refinanced their home and paid off the 1998 loan in its entirety.

At trial, petitioners attempted to revive only $5,862 of the $20,903 deducted on their return.  They argued that the loan origination fee constituted prepaid interest, and that because the 1998 loan lasted only 467 days, the bulk of the loan origination

---

[9]  It is unclear whether the dates on the report indicate the date of payment, as required, or the date on which petitioners entered the data into their computer.  The Quicken report also fails to adequately substantiate the address of any payees as required by the regulation.

fee is deductible in 1999.  Petitioners calculate that to equal $5,862.[10]

Respondent apparently concedes that the "loan origination fee" represents prepaid interest, and that such interest constitutes "home equity indebtedness with respect to * * * [a] qualified residence" under section 163(h)(3)(A)(ii).[11]  However, respondent argues that the proper method of allocating prepaid interest requires a taxpayer to look to the stated term of the loan--in this case, 30 years--to determine the amount attributable to a particular tax year.  Respondent argues that the effect of a subsequent refinancing is that a taxpayer may deduct in the year of the refinancing any prepaid interest not previously deducted. Respondent accordingly conceded that petitioners are entitled to a deduction of $250 for prepaid interest in 1999.[12]

Respondent's approach to the deductibility of prepaid interest is correct.  Section 461(g)(1) provides:

---

[10]  $7,500 divided by the 467-day existence of the loan, multiplied by the 365 days of 1999.

[11]  In some instances, "loan origination fees" may include charges for services, and not prepaid interest.  See, e.g., Goodwin v. Commissioner, 75 T.C. 424, 440-442 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982); Lange v. Commissioner, T.C. Memo. 2005-176; Rev. Proc. 87-15, 1987-1 C.B. 624.

[12]  For interest of $7,500 on a loan with a stated term of 360 months, the interest allocable to 12 months is $250.

In general.--If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period--

    (A) with respect to which the interest represents a charge for the use or forbearance of money, and

    (B) which is after the close of the taxable year in which paid,

shall be charged to capital account and shall be treated as paid in the period to which so allocable.

The parties do not dispute that petitioners prepaid interest in 1998. Nor, apparently, do the parties dispute that the prepaid interest should be amortized over the life of the loan.[13] The only dispute is whether the period to which the interest relates should be determined by the terms of the loan when it was entered into--in this case, 30 years--or the actual life of the loan, foreshortened as it was by petitioners' subsequent refinancing of March 2000.

The interest which petitioners prepaid "[represented] a charge for the use or forbearance of money" for the entire contractual term of the loan. For 1999, petitioners are

---

[13] Under certain circumstances, points paid in connection with the purchase or improvement of a principal residence may be deductible. Sec. 461(g)(2). Petitioners have not alleged, and we do not find, that they paid the loan origination fee in connection with the purchase or improvement of their principal residence. We therefore find that the exception of sec. 461(g)(2) does not apply. See, e.g., Kelly v. Commissioner, T.C. Memo. 1991-605; Fox v. Commissioner, T.C. Memo. 1989-232, affd. without published opinion 943 F.2d 55 (9th Cir. 1991).

therefore entitled to deduct only that portion of the points allocable to 1999 as a portion of the 30-year loan.  Cf. Square D Co. & Subs. v. Commissioner, 121 T.C. 168, 194 nn.21 & 22 (2003). From the record before us, that amounts to $250.

C.  SEP-IRA Contributions

At trial, Dr. Rinker testified that she made contributions to three different SEP-IRA funds in 1999, and petitioners argued that they should be allowed a deduction for the 1999 contributions.  Petitioners did not claim a deduction for the contributions on their 1999 return because, on the basis of the Schedule C income shown on the return, no deduction was permissible.  However, petitioners argued that, on the basis of respondent's adjustments and petitioners' concessions with regard to the Schedule C income, such a deduction would now be allowable and appropriate.

Even if the Court accepts Dr. Rinker's uncorroborated assertions that she contributed money to retirement accounts, petitioners have failed to provide the Court with any evidence that Dr. Rinker made the contributions under plans that meet the qualifications for SEP-IRA's.  See secs. 219, 401, 408.  We therefore conclude that petitioners are not entitled to a deduction for the contributions in 1999.

IV. Penalties

    A.  Section 6662(a)

Respondent determined an accuracy-related penalty under section 6662(a) of $8,021.80.  Respondent determined that the entire underpayment of tax for 1999 was attributable to negligence or disregard of rules or regulations, a substantial understatement of income tax, and/or a substantial valuation misstatement.[14] Petitioners argue that the underpayments for 1999 were caused by their reasonable reliance on Mr. Hertz in preparing their return. This reliance, petitioners argue, qualifies as "reasonable cause and good faith", and under section 6664(c)(1), the penalty should not be sustained.

    1.  Burden of Production

Section 7491(c) provides that the Commissioner will bear the burden of production with respect to the liability of any individual for additions to tax and penalties.  "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount".  Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v.

---

[14]  Although the notice of deficiency includes "substantial valuation overstatement" (sic) as a basis for applying the accuracy-related penalty, it appears that respondent did not determine any tax deficiency based on a valuation overstatement. We therefore do not address the aspects of the accuracy-related penalty which relate to a substantial valuation overstatement.

Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner has done so, the burden of proof is upon the taxpayer to establish reasonable cause and good faith. Higbee v. Commissioner, supra at 449.

### 2. Section 6662(a) Penalty

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2) due to negligence or disregard of rules or regulations. Sec. 6662(b). The term "understatement" means the excess of the amount of tax required to be shown on a return over the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)). Sec. 6662(d)(2)(A). Generally, an understatement is a "substantial understatement" when the understatement exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return. Sec. 6662(d)(1)(A). The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code. Sec. 6662(c). Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The

term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).

### 3.  Analysis

Respondent has met the burden of production imposed on him by section 7491(c).  Respondent has shown that the underpayments of petitioners' 1999 taxes exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return, and is therefore due to a "substantial understatement".  Sec. 6662(d)(1)(A).  To avoid application of the penalty, petitioners must therefore demonstrate that the underpayments of tax for 1999 were due to reasonable cause and good faith.[15]  See Higbee v. Commissioner, supra at 449.

Whether applied because of a substantial understatement of tax or negligence or disregard of rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The decision as to whether a taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith

---

[15]  There is no claim or proof that petitioners may reduce the amount of the understatement under sec. 6662(d)(2)(B).

reliance on the advice of a professional such as an accountant. See <u>id.</u> Further, an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith. See <u>Remy v. Commissioner</u>, T.C. Memo. 1997-72.

At the time the return was prepared, Mr. Hertz was an enrolled agent. Petitioners had engaged Mr. Hertz to prepare their income tax returns for 1 or 2 years before 1999.

### a. <u>Deductions Relating to Mr. Davis's Photography Activities</u>

Petitioners honestly misunderstood Mr. Davis's photography expenditures to be deductible business expenses. Although petitioners are both highly educated in fields that do not relate to taxation, we find that their misunderstanding was reasonable. We therefore conclude that petitioners had reasonable cause and acted in good faith as to the underpayments resulting from deductions of photography-related expenditures.

### b. <u>Gross Receipts and Deductions of Dr. Rinker's Medical Practice</u>

Petitioners credibly testified that they provided Mr. Hertz with all of the necessary records and information with which to determine the gross receipts and allowable deductions for Dr. Rinker's medical practice, and that they relied on Mr. Hertz to determine the proper figures on their return. We conclude that for 1999 petitioners had reasonable cause and acted in good faith

as to the underpayments resulting from Dr. Rinker's claimed gross receipts and business deductions.

### c. Deductions for Home Mortgage Points

The record also indicates that petitioners relied on Mr. Hertz to determine the proper amount of their deduction for personal interest. Dr. Rinker testified that she gave Mr. Hertz all of the records relating to her home mortgage and relied on him to determine the proper deduction because she had "no idea, looking at mortgage papers, what is tax-deductible and what isn't. And I just told * * * [Mr. Hertz] to figure it out." We therefore conclude that petitioners had reasonable cause and acted in good faith as to the underpayment attributable to petitioners' erroneous deduction of home mortgage points.

### d. Deductions for Personal Medical Expenditures

The record does not reveal that petitioners had reasonable cause and acted in good faith with respect to their claimed $11,693 in deductible medical expenses. Regardless of whether the erroneous deductions were results of Mr. Hertz's negligence or otherwise, petitioners had significant "warning signs" that their deductions for medical expenditures were improper. As noted above, petitioners carried employer-provided medical insurance, and many of the claimed expenditures were covered by the terms of the insurance policy. See <u>Allen v. Commissioner</u>, 925 F.2d at 353. We therefore sustain respondent's application

of the section 6662 penalty as it applies to the portion of the deficiency attributable to claimed deductions for personal medical expenses.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.